IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CYNTHIA COLEMAN,

      Plaintiff,

vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant.

No. CIV S-04-2273 LKK PAN

FINDINGS AND RECOMMENDATIONS

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court recommends plaintiff's motion for summary judgment or remand be granted and the Commissioner's cross-motion for summary judgment be denied.

/////

/////

/////

/////

1

I. Factual and Procedural Background

In a decision dated November 26, 2003, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. The ALJ found plaintiff has severe impairments of carpal tunnel syndrome, diabetes mellitus, and lumbar spine disorder, but that these impairments do not meet or medically equal a listed impairment; plaintiff has the severe impairment of substance abuse, and that this impairment meets the requirements of section 12.09, Appendix 1, Subpart P, Regulations No. 4 and is expected to preclude her from working for at least 12 continuous months; plaintiff's substance abuse is material to a finding of disability; plaintiff's

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

allegations are not totally credible; plaintiff has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for two hours in an eight hour workday, sit for six hours in an eight hour workday, occasionally climb, balance, stoop, kneel, crouch, crawl, and bilaterally handle and finger; plaintiff has the residual functional capacity to perform a full range of light work; plaintiff's exertional limitations do not permit her to perform a full range of light work; a significant number of jobs exist in the national economy that plaintiff could perform; and plaintiff is not disabled. Administrative Transcript ("AT") 32. Plaintiff contends that the administrative record is incomplete; that the ALJ wrongly found that plaintiff's substance abuse was a material factor in plaintiff's disability; that substantial evidence in the record contradicts the ALJ's conclusions; and the ALJ improperly relied upon an incomplete hypothetical offered to the vocational expert (VE) and that the VE identified jobs plaintiff was not capable of performing.

This is plaintiff's third application for benefits. On October 17, 1996, the Commissioner denied applications for Disability Insurance Benefits ("DIB") and SSI under Titles II and XVI, respectively, of the Act. The commissioner denied a second application under Title XVI on December 10, 1999.

II. Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

1  197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, <u>Howard v. Heckler</u>,
2  782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that
3  detracts from the ALJ's conclusion weighed.  <u>See</u> <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir.
4  1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of
5  supporting evidence.  <u>Id</u>.; <u>see</u> <u>also</u> <u>Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989).  If
6  substantial evidence supports the administrative findings, or if there is conflicting evidence
7  supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, <u>see</u>
8  <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an
9  improper legal standard was applied in weighing the evidence, <u>see</u> <u>Burkhart v. Bowen</u>, 856 F.2d
10 1335, 1338 (9th Cir. 1988).

III.  <u>Analysis</u>

  a.  <u>The Absence of Several Exhibits in the Transcript is not Error.</u>

Several items were unavailable for inclusion in the record.  These items included plaintiff's initial application for benefits in 1994, her 1994 disability determination and transmittal, her 1995 disability determination and transmittal, and her 1995 notice .  Failure to include these items in the record is not error requiring remand.

There is no indication that any of the information contained on the missing items is relevant to an adjudication of this case.  Furthermore, as the missing items either contain information available elsewhere in the record, or administrative information relating to the denial of benefits, their relevance is limited.  Remand to consider these items is not necessary.

  b.  <u>The ALJ did not Error in his Finding that Plaintiff's Substance Abuse was a Severe Impairment.</u>

Benefits will not be awarded if alcohol or drug addiction materially contributes to plaintiff's disability.  42 U.S.C. §§ 423(d)(2)(C); 20 C.F.R. §§ 404.1535(a), 416.935(a).  Prior to assessing the materiality of an addiction, an ALJ must first proceed through the five-step sequential analysis to determine if plaintiff is disabled.  <u>Bustamante v. Massanari</u>, 262 F.3d 949,

4

955 (9th Cir. 2001).  Only after a finding of disability may an ALJ proceed to determine if plaintiff "would still be disabled if [they] stopped using alcohol or drugs."  20 C.F.R. § 404.1535(a), 416.935(a).

Plaintiff bears the burden of proving alcoholism or drug addiction is not a contributing factor material to a disability determination.  Ball v. Massanari, 254 F.3d 817, 821 (9th Cir. 2001); see also Brown v. Apfel, 192 F.3d 492, 498 (5th Cir. 1999).  Drug or alcohol abuse is material to a determination of disability if the ALJ would not "find [plaintiff] disabled if [plaintiff] stopped using drugs or alcohol."  20 C.F.R. § 416.935(b)(1).  In assessing materiality, an ALJ must determine which of plaintiff's current disabling impairments would remain if the chemical dependency ceased, and whether those remaining impairments would be severe enough to warrant disability.  Id.

In this case, the ALJ determined plaintiff's substance abuse was material to a finding of disability.  AT 31.  However, the ALJ withheld application of that finding until he completed the remainder of the five-step analysis.  The ALJ continued to analyze plaintiff's remaining conditions of carpal tunnel, diabetes, and lumbar spine disorder without any attempt to separate plaintiff's substance abuse from the analysis.  Id.  This independent analysis meets the standard required under the law.  Bustamante, 262 F.3d at 955.  Upon concluding that plaintiff was not disabled, there was no need to apply plaintiff's substance abuse to determine eligibility for benefits.

Plaintiff contends that the ALJ incorrectly found plaintiff was addicted to drugs and alcohol.  Plaintiff's Memorandum at 3:10-11.  As a result, plaintiff argues that the ALJ was predisposed to a finding of not disabled.  Id.  This argument is without merit.

There is no indication that the ALJ's findings regarding plaintiff's substance abuse influenced his ultimate conclusions in this case.  As noted below, substantial evidence supports the ALJ's findings of plaintiff's residual functional capacity.  Furthermore, substantial

/////

5

1  evidence exists in the record supporting the ALJ's conclusion that plaintiff suffered from severe
2  substance abuse.

3         The ALJ relied on the findings of the previous disability determination that
4  concluded in December 1999. AT 28. At that time, it was determined that plaintiff was not
5  disabled. AT 275. The ALJ noted that no new and material evidence was introduced to rebut the
6  presumption of continuing non-disability. AT 28.

7         The ALJ documented plaintiff's history of substance abuse, including abuse of
8  alcohol, drugs, and prescription medications. AT 25. Medical evidence contained in plaintiff's
9  complete case record indicate she has abused alcohol and drugs, or suffered from impairments
10 induced or compounded by her substance abuse. Id. The ALJ is responsible for developing a
11 complete medical history for plaintiff, examining at least 12 months preceding the month in
12 which plaintiff files for benefits. 20 C.F.R. § 416.912(d). In addition, evidence includes
13 decisions of disability by any governmental or nongovernmental agency. 20 C.F.R.
14 § 416.912(b)(5). As the ALJ is required to consider "all evidence available in [plaintiff's] case
15 record," it was not error to examine and rely upon medical information which occurred during
16 periods of time covered by prior disability determination. 42 U.S.C. § 423(d)(5)(B).

17        Even if the court were to discount the medical reports from plaintiff's prior
18 application, there remains substantial evidence to support the ALJ's conclusions. The ALJ
19 documented numerous instances of plaintiff's alcohol or drug abuse. Furthermore, the ALJ cited
20 repeated diagnoses by plaintiff's treating physicians that she was alcohol dependent or suffering
21 from conditions induced by alcohol dependency, or that she was engaging in drug seeking
22 behavior. AT 25-26.

23        There is substantial evidence of plaintiff's drug and alcohol abuse throughout the
24 record. The ALJ stated that plaintiff's blood alcohol content upon admission to the emergency
25 room in September 2001 was .08. AT 463. At this time, plaintiff was also confronted by doctors
26 who questioned the large number of painkillers she had received during the month. AT 464.

1  Plaintiff appeared at the emergency room on March 18, 2002, with a blood
2  alcohol content of .19.  AT 526.  At this time, doctors expressed concern about the large numbers
3  of painkillers plaintiff had been accumulating, AT 528, and worried that plaintiff might be
4  doubling her prescriptions.  AT 549.  She was diagnosed with recurrent pancreatitis caused by
5  her alcohol use.  AT 531.

6  On June 29, 2002, plaintiff came to the emergency room complaining of
7  abdominal pain and smelling strongly of beer.  AT 514.  This incident was followed by additional
8  emergency treatment on May 11, 2003.  At that time, plaintiff's blood alcohol content was .32.
9  AT 688.

10  The plaintiff seeks to characterize these incidents as the momentary setbacks of an
11  otherwise drug and alcohol free person.  However, there is ample support in the record for the
12  ALJ to determine that they evidence s serious drug and alcohol problem. Even when the evidence
13  in the record is able to support a different interpretation, the court will not substitute its judgment
14  for the well-reasoned opinion of the ALJ.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).
15  The ALJ's analysis of plaintiff's substance abuse was proper.

16  c. Substantial Evidence does not Support the ALJ's Determination of Plaintiff's Residual
17  Functional Capacity.

18  Plaintiff contends the ALJ improperly assessed the severity of her impairments
19  and failed to consider all of them in combination.  An impairment is "not severe" only if it
20  "would have no more than a minimal effect on an individual's ability to work, even if the
21  individual's age, education, or work experience were specifically considered."  SSR 85-28.  The
22  purpose of step two is to identify claimants whose medical impairment is so slight that it is
23  unlikely they would be disabled even if age, education, and experience were taken into account.
24  Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987).  "The step-two inquiry is a de minimis
25  screening device to dispose of groundless claims."  Smolen v. Chater 80 F.3d 1273, 1290 (9th
26  /////

1 Cir. 1996); see also Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001). Impairments
2 must be considered in combination in assessing severity. 20 C.F.R. § 404.1523.

3         Plaintiff argues the ALJ failed to recognize as severe a number of alleged
4 impairments and that the ALJ failed to consider the combination of plaintiff's physical and
5 mental conditions. Plaintiff alleged numerous physical ailments that the ALJ did not find to be
6 severe, including arthritis in the right knee, pain and weakness in the right knee, a Mallory-Weiss
7 tear, anemia, pancreatitis, peptic ulcer disease with bleeding. Plaintiff's Memorandum at 4:10-
8 13. She also complained of major depression, a mental impairment. Id. at 13.

9         Although the burden is on plaintiff at step two of the sequential evaluation, see
10 Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998), plaintiff has offered no meaningful
11 argument in support of the claim that the ALJ erred by failing to find plaintiff's physical ailments
12 severe. A mere recitation of medical diagnoses does not demonstrate how each of the physical
13 conditions included in that recitation impacts plaintiff's ability to engage in basic work activities.
14 Put another way, a medical diagnosis does not an impairment make.

15         Plaintiff simply repeats her assertions of numerous physical disabilities without
16 any supporting evidence that the ALJ's predisposition regarding plaintiff's substance abuse
17 improperly tainted the findings. As noted above, that assertion is groundless and not supported
18 by the facts or procedure in this case. The findings of the ALJ with regard to plaintiff's physical
19 limitations are supported by substantial evidence in the record and will not be disturbed.

20         There is no objective medical evidence in the record to support plaintiff's
21 contentions that she suffers from severe physical impairments not identified by the ALJ that are
22 sufficient to affect her ability to work. Dr. McIntire found nothing significant during his
23 examination of plaintiff's knees. AT 468. This finding concurred with the ample medical
24 evidence in the record that concluded plaintiff's knees were well. AT 399, 400, 471, 552, 564.
25 Furthermore, the medical evidence does not diagnose plaintiff with a peptic ulcer, rather, it states
26 that it is one possibility. AT 710. Finally, plaintiff offers no support to her conclusions that

anemia or a Mallory-Weiss tear are severe impairments and there is no evidence in the record to support any finding that they will significantly limit plaintiff in any way. While step two is a de minimis threshold, some evidence is required. Webb v. Barnhart, 433 F.3d 683 (9th Cir. 2005).

The ALJ's failure to discuss in his findings the evidence relating to plaintiff's numerous physical complaints does not mean that it was not considered. The ALJ is under no obligation to discount theories of disability wholly unsupported by the facts. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003); Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984). It is plaintiff's burden to present evidence of disability at step two of the sequential analysis. With regards to the myriad physical complaints, plaintiff utterly failed in that task.

The same cannot be said for plaintiff's mental complaints. Substantial evidence exists in the record for the ALJ to assess plaintiff's mental impairment. Plaintiff was diagnosed with a major depressive disorder, AT 594, and a depressive syndrome, AT 417. Medical opinions determined that plaintiff has a number of moderate limitations in her ability to understand, remember, and carry out detailed and complex instructions; relate and interact with coworkers and superiors; maintain concentration, persistence and pace; and perform without additional supervision. AT 412, 428-29. The most recent assessment of plaintiff by doctors at the State Agency determined that she was only moderately limited in her ability to understand, remember, and carry out detailed instructions, as well as her ability to maintain attention and concentration for extended periods. AT 638.

Plaintiff's major depressive disorder and its resulting impact on plaintiff's job skills should have been considered severe by the ALJ. See Bustamante, 262 F.3d at 956 (finding plaintiff mental impairments, including deficiencies in concentration, persistence and pace, severe); Edlund, 253 F.3d at 1158-1159 (citing plaintiff's uncontroverted diagnosis by examining psychologist of agitated depression as basis to find a severe impairment). The regulations define non-severe impairments as those that do not significantly impact the ability to perform basic

1 work activities. 20 C.F.R. § 404.1521. Basic work activities include, among other things, use of
2 judgment; responding appropriately to supervision, co-workers, and usual work situations; and
3 dealing with changes in a routine work setting. Id. As the reports of the examining psychologist
4 indicate, plaintiff is limited by her depression in many of these categories.

5       The ALJ offered no rationale in his findings to support a conclusion that
6 plaintiff's mental impairments were not severe. The ALj expressly discusses each of the mental
7 examination or assessments in his opinion. AT 26. However, at no time does he offer any
8 reasoned opinion to discredit those opinions or to support a conclusion that the conditions
9 described therein are not severe.

10       The ALJ based his assessment of plaintiff's residual functional capacity upon the
11 prior adjudication in 1999 that found she was not disabled. At that time, the ALJ determined
12 plaintiff had severe impairments of carpal tunnel, back injury, and depression secondary to
13 alcohol abuse. AT 294. Accordingly, the ALJ determined plaintiff was capable of doing
14 unskilled work that involved the lifting 20 pounds occasionally and carrying 10 pounds
15 frequently; standing and walking up to two hours in an eight hour workday; sitting up to six
16 hours in an eight hour workday; occasionally stooping, crouching, and crawling; and limited fine
17 finger manipulation. AT 295. Plaintiff was precluded from performing repetitive pushing or
18 pulling. Id.

19       Plaintiff's medical records fail to diagnose any new or increasingly significant
20 physical issue that was not present during prior applications, with the exception of substance
21 abuse. The various complaints of physical ailments made by plaintiff are unsupported by
22 evidence in the record. In this regard, plaintiff failed to present any credible evidence the
23 "changed circumstances" indicating greater physical disability necessary to overcome the
24 presumption of continuing nondisability. Chavez v. Bowen, 844 F.2d 691 (9th Cir.
25 1988)(quoting Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir. 1985)).
26 /////

Since the date of her prior application, plaintiff has continued to seek treatment for her various complaints. However, none of her treatment records show any diagnosis of serious illness or the need for further treatment beyond those identified by the ALJ in this and prior applications. The most common theme in plaintiff's recent medical records is the absence of medical findings. AT 526 ("normal"); 529 ("no objective evidence of diagnosis of pancreatitis"); 542 ("unremarkable"); 570 ("normal" ultrasound); 699 ("it is doubtful this is recurrence of pancreatitis"); 702 ("normal"); 712 ("ultrasound and CT of abdomen were both negative"). This theme appears nearly as often as doctors admonishments to plaintiff that she seek counseling for her addictive behaviors, quit smoking, and eat properly.

Plaintiff's argument that additional evidence of carpal tunnel and back pain are new and material has no merit. Plaintiff's Memorandum at 4:24-25. The electromyography study referenced by plaintiff occurred in January 1999. AT 575. This can hardly be considered new as it was occurred during the period of prior adjudication.

Furthermore, the increased back pain to which plaintiff refers is neither new nor material as the sole evidence to support its severity comes from plaintiff's subjective complaints. AT 545. The ALJ found plaintiff's testimony about increasing pain and limitations not credible. This finding was not in error.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment,

the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). Without affirmative evidence of malingering, "the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ properly determined that plaintiff was not credible. In making this determination, the ALJ noted the discrepancies between plaintiff's complaints and the medical evidence in the record. AT 29. Furthermore, the ALJ cited the lack of treatment plaintiff has received for her alleged physical ailments. Id.

The ALJ discussed plaintiff's history of deceptive behavior about her substance abuse as well as the concerns about malingering. AT 29. Plaintiff went to the emergency room in September 2001 with a blood alcohol content of .08. AT 463. Subsequent to this incident, plaintiff was less than truthful about her use of alcohol. AT 457 (telling doctors in October 1, 2001, that she had a beer on very rare occasions); AT 83 (telling officials with California Welfare

and Institutions on October 12, 2001, that she had been abstinent for two years); AT 531 (telling San Joaquin hospital officials on March 6, 2002 that she had not used alcohol for two to three years).

This behavior continued in March 2002 when plaintiff denied using alcohol despite the fact that doctors noticed that she smelled strongly of it. AT 525. In June 2002, plaintiff went to the emergency room claiming she only had one half of one beer prior to her arrival, yet doctors stated that she smelled strongly of alcohol and her complaints were consistent with its abuse. AT 514. In May 2003, plaintiff reported to the emergency room with a blood alcohol content of .32. AT 688. One month later, she misled her doctors by telling them that she had not used alcohol for many months. AT 652.

Even when testifying before the ALJ, plaintiff's continued to be less than truthful. Plaintiff testified that she never used drugs. AT 724. However, evidence in the records indicates that plaintiff had used drugs in the past; including crack cocaine from 1985 to 1987, AT 496, and marijuana and cocaine as a teenager, AT 483, 496. In addition, plaintiff testified that she was not drinking in 2002, AT 725; however, as described above, she went at least twice to the emergency room and tested positive for alcohol or smelled strongly of it.

The ALJ's assessment of plaintiff's physical complaints was proper. There is no new and material evidence to support any conclusion that plaintiff suffers from severe physical impairments greater than those identified by the ALJ in his findings. The evaluation of plaintiff's credibility in reaching this conclusion was supported by ample evidence in the record.

However, there is new and material evidence in the record of plaintiff's increasing mental impairment sufficient to constitute "changed circumstances," Chavez, 844 F.2d at 691 (quoting Taylor v. Heckler, 765 F.2d at 875), and overcome the presumption of continuing non-disability. In plaintiff's 1999 adjudication, the ALJ cited numerous mental health opinions, none of which concluded that plaintiff suffered from major depression or was seriously mentally impaired, absent her drug and alcohol dependence. AT 288-90. In fact, at several times in the

nine months prior to the ALJ's 1999 adjudication, plaintiff was found to be not depressed or malingering. AT 289-90.

The evidence for the current period unquestionably diagnoses plaintiff as depressed. AT 412. Unlike plaintiff's previous assessments, examining psychologists diagnosed depression that resulted from factors other than her drug and alcohol abuse, including lack of education, id., and that required treatment other than abstention from alcohol, including medication and psychotherapy. AT 412. These medical evaluations constitute new and material evidence of plaintiff's increasingly severe depression and should have been considered by the ALJ in determining plaintiff's residual functional capacity.

The residual functional capacity is the most an individual can perform after considering their severe impairments. 20 C.F.R. § 416.945; SSR 96-8p. The ALJ based his residual functional capacity in this case on plaintiff's prior adjudications, AT 28, failing to provide any explanation for his conclusion that plaintiff's mental illness was not severe in light of significant evidence to the contrary. Furthermore, the ALJ's finding that there exists no new and material evidence to rebut the presumption of continuing non-disability is contrary to the medical opinions in the record as they concern plaintiff's mental illness.

The evidence supports the conclusion that plaintiff does not suffer any severe physical impairments, other than those identified by the ALJ in his findings. However, plaintiff's mental issues, including major depression, and her moderate limitations in the ability to interact and respond appropriately, limit her ability to perform basic work and must be considered severe. The ALJ's erred at step two of the sequential analysis by failing to recognize that plaintiff's mental impairments were severe. As a result, the residual functional assessment is incomplete. Reliance on the previous assessment, and the failure to discuss the new and material evidence of plaintiff's mental illness, was error. Remand is appropriate for consideration of this issue and continuation of the sequential analysis in light of plaintiff's severe mental impairment and the new and material evidence in the record.

1        d. <u>The ALJ Improperly Relied upon an Incomplete Hypothetical that was Presented to
2        the Vocational Expert</u>.

        Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. <u>Magallanes v. Bowen</u>, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. <u>Embrey v. Bowen</u>, 849 F.2d 418, 422-23 (9th Cir. 1988).

        The hypothetical relied upon by the ALJ to determine that a significant number of jobs existed in the national economy was incomplete. The VE assumed plaintiff capable of unskilled light work, with a limitation of two hours standing and walking in a eight hour day; sitting for six hours; occasional climbing, balancing, stooping, kneeling, crouching, crawling, and bilateral handling and fingering. AT 738. The inclusion of plaintiff's physical limitations in the hypothetical was supported by substantial evidence in the record. However, the ALJ did not include any of plaintiff's mental impairments in the hypothetical.

        Plaintiff's depression and other mental limitations are significant nonexertional impairments that should have been considered by the VE. Nonexertional limitations are non-strength related limitations. These include mental, sensory, postural, manipulative, and environmental limitations. <u>Desrosiers v. Secretary of Health & Human Services</u>, 846 F.2d 573, 579 (9th Cir.1988); 20 C.F.R., Pt. 404, Subpt. P, Appendix 2, § 200.00(e).

        The evidence in the record establishes that plaintiff's mental illness was severe. Failing to include that impairment in the hypothetical was error. As noted above, multiple examinations in the record indicate that plaintiff suffered significant nonexertional impairments

15

affecting her ability to do basic work. While many of these impairments may be controlled through medication, that scenario was not presented to the VE. Indeed, the only scenario offered to the VE that included plaintiff's mental illness resulted in a conclusion that no jobs existed in the national economy. AT 751.

There is no indication that the VE considered and incorporated the medical evidence prior to reaching his conclusions. Indeed, the VE limited himself to the hypotheticals offered by the ALJ and plaintiff. AT 736-51. Furthermore, there is nothing about the category of unskilled work that implicitly encompasses plaintiff's mental impairments. See 20 C.F.R. § 404.1568(a). Remand to the ALJ is necessary in order to permit him to complete the sequential analysis, including, if necessary, analysis at step five that encompasses plaintiff's mental impairments.

For the foregoing reasons, this matter should be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment be denied;

2. The Commissioner's cross motion for summary judgment be denied; and

3. This matter be remanded for further proceedings consistent with this order.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised

/////

/////

1 that failure to file objections within the specified time may waive the right to appeal the District
2 Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
3 DATED: May 24, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

ggh13
Coleman.ss.wpd